Monica sued B.A.R.A.J. for Petitioner Blairam Tabaku At the outset, I would just like to submit to this Court that there are no issues regarding credibility or past persecution. The only issue is future persecution. Mr. Tabaku is asking that this Court reverse the decision of the BIA and the immigration judge and grant his application for asylum based on a well-established, well-founded fear of future persecution. Mr. Tabaku has established a well-founded fear of persecution. He has met both the objective and subjective standard tests. With respect to the objective standard, both the immigration judge and the State Department reports concede that there are ethnic tensions and there continue to be ethnic tensions between individuals of Macedonian descent and ethnic Albanians. Mr. Tabaku is an ethnic Albanian born in Macedonia. In fact, on page 186 of the administrative record, the State Department reports that there are increasing destabilizing tensions in Macedonia. The immigration judge on page 65 of the administrative record also concedes that tensions exist and he seems to concede in his decision that if the petitioner, he seems to concede in his decision that the petitioner, Mr. Tabaku, would be persecuted if, and this is the whole crux of the argument, if he wore the ethnic Albanian emblem, the eagle, in public. The only concern was, the immigration judge, was that whether or not the petitioner was required to wear the emblem or elected to wear it in the future. The testimony that was brought out in the hearing was that Mr. Tabaku indicated he, in fact, were he to return to Albania, would wear the emblem prominently inasmuch as it stands for his Albanian heritage. And he would wear it because he thought he wanted to? Was there to be no compulsion from the outside that he would wear it? No compulsion from the outside other than his own belief in the independent autonomous state of Albania within Macedonia and the fact of his political opinions against the treatment the ethnic Albanians had received at the hands of the Macedonians when he was there. There was also testimony brought out by his brother who testified on his behalf that he, in fact, was subjected to persecution because of his wearing of an emblem, namely the eagle, a ring, that at one point in time he was stopped by the militia in Macedonia. The ring was confiscated, stepped on the ground. And there was testimony that he, in fact, went to jail for a period of time for that. There's also other testimony. For that or just went to jail for a period of time? It's not clear in the record, Your Honors, but it appears that he testified at one point in the record that he was sent to jail for that, for a 7 to 14-day time period. And the IJ basically discounted him, though? The IJ discounted him. However, I would note that the testimony and the record indicates that he, meaning Mr. Petitioner's brother, was in fact granted asylum affirmatively by the INS based on his, based on an asylum application that was similar to Mr. Tabacco's, the Petitioner in this case. But surely this IJ is entitled to judge his credibility with regard to what he says in this case, and he had reasons to disbelieve him, which is that he said things that were contradictory to what Mr. Tabacco himself said. Again, under the substantive evidence test, there was not sufficient contradictory inconsistent testimony that was provided by Mr. Tabacco. You haven't argued that anyway, have you? Correct. We have not argued that. Don't we have to just take the brother as zero? That's correct, Your Honor. But there was additional testimony by his uncle, and that was not discounted by the IJ, I believe. And the uncle also testified that there were not only his immediate family members, namely his daughters, who when they returned to Macedonia were wearing ethnic symbols, emblems like the eagle. They were confiscated by the authorities. But he was also aware of a cousin who had been sent to a female prison for approximately six weeks because she wore the ethnic album of the eagle as well. Do you have any case law that's anything like this in which somebody did not engage in political act – in visible political activity, although he harbored the beliefs, as I understand it, when he was there, because he was very young, among other things, came here, was not persecuted, came here, and says, I'm going to do things if I go back which are going to make me be persecuted? No, Your Honor. I was not able to find anything. The closest thing – the closest two cases were one cited by the government, and that was out of the Third Circuit, where the beliefs were so intrinsically tied to the woman that she was – that would be unfair to make that change. Like a religion case or something like that. I'm sorry? Like a religion case where people have – Exactly. Their religion dictates that they do X, Y, and Z. Exactly. Simply because they like to do it, or because – even when they do it because of their conviction, but not because of any ideological compulsion to do that thing as opposed to believe something. Exactly. So we believe that the objective component was met by the State Department reports, and, in fact, the immigration judge concedes the tensions continue to exist. With respect to the subjective component, given the testimony of the uncle that has not been discounted, and the evidence and the testimony of Mr. Tabacco, which, once again, the immigration judge found to be credible, it is reasonable for Mr. Tabacco to fear going back to Macedonia inasmuch as he intends to portray his political opinion by wearing the ethnic – the eagle, the ethnic emblem. This is a hard case because you've got to hypothesize or project behavior on both sides. That is to say, you've got to predict that Mr. Tabacco, when he goes back, will wear emblems, the eagle or whatever other emblem he might wear, indicating his not only Albanian ethnicity, but there's a certain sense of standing up for Albanian rights that that would entail. And on the other side, you have to predict the reaction of the Macedonians or the Macedonian government that will be sufficiently severe to constitute persecution. And both of those are based upon a prediction rather than on any fact. He hasn't done it. They haven't done it. Well, I would respectfully disagree with that. There is testimony, factual testimony, that others who have done it have faced persecution. The cousin who was sent to jail for – But there's not evidence that everybody who's done it or lots of people who've done it or a majority of people who've done it or anything like that. Well, once again, it is the ethnic Albanians in Macedonia who are doing it and that – The other cousin simply had the emblem confiscated. Would that be persecution? No, Your Honor, it would not be. But she was sent to jail. It was not just simply confiscated. The cousins who came from the United States to Macedonia had them confiscated. But they were not natives and citizens of Macedonia returning to that country. They were United States citizens on a visit to that country. And, in fact, the government there, as the record brought out, confiscated the emblems and, in fact, with respect to the wife, quote, unquote, lost her passport, her United States passport. With respect to predicting it, I would submit that there is no prediction because we have evidence that, in fact, that occurs. And we have his own testimony, Mr. Tabaka's own testimony, that he would, in fact, do that. Just because it's a prediction doesn't mean it's not necessarily insufficient. That is to say, well-founded fear is sufficient. But this may be a little bit too much for me. I'd like to reserve the remainder of my time. Please. Morning again. May it please the Court. My name is Keith Bernstein, and I represent the Respondent, Attorney General John Ashcroft. It's an initial matter. Something that Petitioner's counsel did not point out is that the Court likes jurisdiction to consider this claim because Mr. Tabaka, or Tabaka, I beg your pardon, Mr. Tabaka did not specifically argue the point that his well-founded fear is based on his intention to display nationalistic emblems. He did not raise that particular argument before the Board. His failure to therefore exhaust his administrative remedies as to that issue. He raised it before the I.J., right? He did. And here, unlike in other instances, my understanding is that the Board didn't seem to have a different form of short order affirmance. In other words, it didn't simply say we're affirming the result but not the reasoning. He said we affirm the decision of the I.J., and he was adopting our affirmance as a statement that conclusions upon a review coincide with those of the immigration judge articulated in his or her decision. So essentially, they made a finding on the issue that was before the I.J. If that's the Court's position, Your Honor, then the fact that Mr. Tabaka may have not failed to exhaust his administrative remedies does not necessarily compel a conclusion contrary to the immigration judge's decision. And on the merits of the claim, then, it is the government's position that his purely speculative claim and a claim of asylum or a well-founded fear based on pure conjecture is not enough to support the objectively reasonable standard that is required by the Court. And I have seen these cases. Suppose somebody comes over here from Iran and says when I got here, I became a Christian. And when I go back to Iran as a Christian, if I'm sent back to Iran as a Christian, I'm going to be in terrible trouble. And suppose you can substantiate that. Is that what the – why isn't that the kind of thing he's saying here? It's true I wasn't sort of practicing my politics at that – when I was there before, but I plan to – I've been converted. I really care more about it now. And when I go back, I'm going to practice my politics. Well, I think there's two ways to be able to distinguish this situation from that hypothetical, Your Honor, notwithstanding the fact that on the whole it seems like the same situation. It seems that Mr. Tabaka's claim is based on that kind of reasoning. But in this case, he is not able to substantiate that, as you suggest. And not only that, he hasn't shown that he is – or there's no record evidence in any case that he is somehow compelled to perform the acts or to engage in the activity that he claims he will. The difference in that hypothetical, for instance, and you referred before to religion, is that those beliefs and those – and that reasoning is so fundamental and necessarily so profound that a well-founded fear could be based on something that a petitioner claims he or she would do. But only if, in that sense, for instance, if that was part of their religion and their belief system that they had already substantiated. In this case, Mr. Tabaka has not substantiated that he ever wore nationalistic emblems or that he – or that there's any reason that he would be compelled to do so when he returned. He simply claims, and the government believes conveniently, that in seeking asylum, I will go back to Macedonia and display these emblems, so therefore I Petitioner's counsel indicated that the I.J. seemed to concede in this case that if he had, in fact, displayed emblems, he would have been persecuted. What the I.J. really said at page 65 of the record, Your Honor, is that had the petitioner been jailed, detained, and otherwise, in a sense, persecuted or mistreated because of doing those things, that may have supported a finding of past persecution and could even be a basis for a well-founded fear. But again, there's no record evidence to substantiate any such claim. Mr. Tabaka cannot rely on the generalized evidence of alleged past persecution or well-founded fear of persecution of either other ethnic Albanians, including his own family members. Notwithstanding the fact that the I.J. did not find his testimony incredible, there's no other evidence beyond his testimony to substantiate the claim that his brother or his cousin or any other ethnic Albanian was persecuted for the same reasons that Mr. Tabaka claims he has a well-founded fear. The ---- It doesn't matter, right? I'm sorry, Your Honor? It doesn't matter that there's no other evidence to substantiate. If he said that this happened to my cousin and my brother and he's believed, then ---- If he's believed, that's fair enough. I thought he just agreed that he was believed. I'm sorry? I thought that the ---- Oh, absolutely, Your Honor. He was believed. So what's the problem? The problem is that even if believed, a finding of credibility or a lack of an adverse credibility finding isn't enough to compel the conclusion that asylum should be granted. No, but it's enough to compel the conclusion that this happened to his brother and to his cousin. Fair enough, Your Honor. But the fact that that happened to his brother and his cousin does not support an objectively reasonable fear on behalf of petitioner, because he also testified that his brother and his cousin had actually worn the emblems. There is no evidence in the record that Mr. Tabaku ever wore such emblems and, again, never intended to do so until he was seeking asylum in the United States. Moreover, it seems somewhat reasonable that if, in fact, his beliefs were so profound that he would be compelled to display nationalistic emblems if returned to Macedonia, why is there no evidence then that he has done so here or ever done so in the past? Again, Your Honor, because the record evidence does not compel a concrete conclusion and because Mr. Tabaku's well-founded fear claim is based purely on speculation and conjecture, there is no reason to reverse the IJ's decision in this case, and the petition for review should be denied. Thank you. Okay. Thank you very much. You've saved some time. Your Honor, I'd just make one brief point. The issue is whether it's subjectively reasonable for the petitioner of fear to return back, and in this case it is subjectively reasonable based on his experiences and his knowledge of what happened to other family members. So the petitioner would ask this Court to reverse the decision and grant his application for asylum. Okay. Thank you very much. Thank both sides for a useful argument. The case of Tabaku v. Ashcroft is now submitted for decision. The last case on our argument calendar today is, and, again, I'm not sure I'm pronouncing it correctly, Test for Michael v. Ashcroft. When you're ready. May it please the Court, Dan Kowalski for the petitioner, Dr. Test for Michael. Thank you. To understand this case, we have to go back to 1939 and then spring forward to 1990. I'll explain why. In every asylum case, there are three distinct components with three different standards of review. First, with respect to findings of fact, by statute, 1252B4B as in boy, we apply what I call the compulsion doctrine or the reasonable adjudicator doctrine.
judges: T.G. Nelson, W. Fletcher, Berzon